Kinkead, J.
I may say to counsel that I spent the best part of the night working on this problem, because it is an important question.
Whenever a judge is unable to satisfy his mind in preparing a charge to submit the case to the-jury, .it is pretty clear that under such circumstances there isn’t anything to submit, and it becomes the duty of the judge then to decide the matter.
*674 I have reached the conclusion at a very considerable effort made in studying the matter, that this plaintiff has no right to recover, and, for the purpose of making the record, I will give my views.
Plaintiff alleges that the defendants are the county commissioners, and that this action is brought against the .defendants in their official capacity as the board of county commissioners of the county.
He avers that on the 25th day of July, 1910, while he was in the lawful and peaceable pursuit of his business, and being in the front yard.of the place of residence at 518 West Broad street in the city of Columbus, in the county of Franklin, he was injured by one or more persons who were a part of a large collection of people who had previously assembled together in the immediate vicinity of said place for an unlawful purpose and with the intention of doing damage to and of injuring certain people whose names are unknown to this plaintiff, and who were then and there passing along and upon the said street in front of the above mentioned place of residence, and also fpr the purpose of doing damage to and injuring people whose names are unknown to this plaintiff, who were then and there riding upon the cars of the Columbus Railway & Light Company, which were passing on the said street in front of the residence named and which said people so assembled together were then and there pretending to exercise correctional powers over said persons who were so passing along and upon said street and who were so riding upon the cars passing on the street, by violence, and without authority of law, and contrary to law.
It is alleged that all of these facts were well known to the defendants, that is the 'county commissioners, and that defendants neglected and failed to use and employ the reasonable and proper means at their disposal to protect the plaintiff from the injury.
The question is whether plaintiff is entitled to maintain this action upon the pleadings and the evidence offered in support thereof.
It appears that about twenty-five or thirty persons had 'collected- together' near á bill board and near .a saloon on the op *675 posite side of the street from where the plaintiff was sitting out in front of the place where he took his meals. The evidence is that the plaintiff was struck on his knee while sitting down at the place stated. No one testified that he saw the piece of brick which struck plaintiff when it was thrown or saw where it came from, or even saw it at all until after it had struck the plaintiff. All testify .that it came from the opposite side of the street from where plaintiff was sitting, that is, from the south, and that they heard a crash in a street car which was moving along between plaintiff and the crowd on the opposite side of the street. The inference is that because of the pending strike and because of the operation of the street cars during the said strike, that the small crowd of persons collected together on the opposite side of the street from where plaintiff was sitting was antagonistic to the railway company and to the persons operating the ear. The evidence discloses that there were cries of “scabs” made to those running the car. There is no positive evidence that any one in this collection of persons threw the piece of brick which hit the plaintiff. There is only a possible inference that such was the case.
The original enactment for the suppression of mob violence was no doubt designed to make the county liable for acts of violence unlawfully and intentionally exercised by them against the body of .the person whom they intended to damage or injure.
The original act provided that any person assaulted by a mob and suffering lynching at their hands, may recover damages. It now reads “A person assaulted and lynched by a mob may recover from the county in which such assault is made.”
Th’e statute provides- that an act of violence by a mob upon the body of any person shall, constitute a lynching. Now to constitute a mob, there must either be a purpose and intent of the collection of the people to damage or injure someone, or there must be a pretense by a collection of persons to exercise correctional power over other persons by violence and without authority of law to give rise to any liability in favor of one assaulted.
It is clear, therefore, that to give rise to any liability on the part of the county, there must be either the intent to injure, or *676 to • exercise correctional power over persons by violence; and lynching can only be committed within the statute when it is accompanied or characterized by either one of these purposes and intent.
The plaintiff can recover under Section. 6283 only when he has suffered injury from a mob attempting to lynch another person. There can be no question about that. It is the plain reading of the language of the statute, and lynching is defined in the first section of this mob statute. I may say that lynching has always been understood to mean a certain thing, and it has'been given a qualified meaning in this statute in order to cover cases where the person who is assaulted and attempted to be lynched does not suffer death. In other words, a recovery can be had by the third person only when under Section 6281 a person has been assaulted and lynched by a mob under such circumstances as will give rise to an action in favor of such person so assaulted, and not otherwise, unless it may be concluded that by the terms of Section 6283 he may recover when a collection of persons intending to damage or injure anyone, or when pretending to exercise correctional, power over other persons by violence and without authority of law, which may be considered a mob, "are attempting to lynch another person.”
Now that statute giving a third person a right to recover is peculiar. He may recover when anyone has been assaulted and lynched, or when a mob, within the meaning of the statute, has assembled and assaults a person, or attempts to lynch someone. The lifaitation of the third person’s right of recovery seems to be only when such a mob has merely attempted to lynch another person. Now, there isn’t anything of that hind in this case.
The right of the third party to recover under Section 6283 being dependent solely upon an attempt being made by a mob to lynch another person, such right of action can not be maintained, unless there is at least an attempt by a mob, having “the intent to damage or injure a particular person,” or pretending to exercise correctional power over other persons by violence, to commit an act of violence upon the body of any person.
*677 Chapter 20 of the code, and that is this moh statute, must be taken and considered together as it was in its original enactment in order to arrive at its correct meaning.
As originally enacted April 10, 1896 (92 O. L., 132), it was an act for the suppression of mob violence, defining a mob, prescribing what constitutes lynching, and affording a remedy to any person assaulted by a mob and suffering lynching at their hands in favor of the person if merely injured, and in favor of his personal representative if death resulted. An amendment was made to the law — I have not the exact date — in 93 O. L., 162, Section 6, which gave a remedy to a person suffering death or injury from a mob attempting to lynch another person.
The prime purpose of this enactment was to afford a remedy for injuries from what is commonly understood by lynching. And lynching being defined in the statute as an act by a mob (it being necessary that the mob shall have the intent and purpose prescribed by the act) inflicting an act of violence upon the-body of any person, it follows that to afford a remedy to a person claiming the right as plaintiff does in this case, it must appear that the mob was attempting to lynch another person. There is no evidence, of course, appearing in this ease warranting any such conclusion. The theory of this case is an entirely different one. The theory is absolutely foreign, in my judgment, to the purpose of this law. It has no possible relation to it: There is no evidence in this ease tending to show an attempt at an act of violence by a mob, as that term is defined in the. statute, to commit an act of violence upon the body of .anyone. Neither is there any evidence that.it was the intent of the collection of people, as disclosed by the evidence, to damage or injure any person. All that we have is some, evidence of some noise, as if a piece of brick came through the windows of the car. It may reasonably' be inferred from that that it might have been the purpose of some one who did such an act to merely injure property rather than it was to injure any particular person. And, of course, that would not be within the meaning of the law. It is impossible to infer that there was even an attempt to commit an act of lynching, which is the sole measure of the right of recovery under Section 6283.
*678 The purpose of the act is clearly disclosed by Section 6281, providing, as it does, that "a person assaulted and lynched may recover" and so on. It manifestly contemplates that the assault must.be for the purpose of lynching. We can not construe the section to read “assaulted or lynched” because the statutory provision 10213' authorizing “and” to be read as “or,” does not apply, and the fact that some statutory rule of interpretation enabling that kind of an interpretation to be given under certain circumstances, is an indication of the soundness of the rule that you can not, in the absence of statute, construe the word “and” to mean “or,” and therefore, it must take the combined .acts, assaulted and lynched, in order to give the right to anyone,, be it the injured person or the third person,' to recover by virtue of this act.
The fact that this section makes the right of recovery dependent upon the fact of assaulting and lynching, discloses the primary purpose' of the enactment to be to provide a remedy in cases of assaults by a mob with the required intent, and resulting in acts of iynehing, causing serious injury or death, as well as to afford, a remedy in favor of a person other than the one attempted to be lynched who has suffered death or injury .from a mob while attempting to lynch another person.
There is nothing to warrant a claim being made that there was a collection of people pretending to exercise correctional power over other persons by violence and without authority, of law. If by any stretch of imagination such a claim could be made in this case, it would have to rest upon the theory that the so-called mob of twenty-five or thirty persons, as disclosed by the evidence here, was endeavoring to exercise some correctional power over the “strike breakers” who were running, the ears. Such a view, however, is impossible, The “strike breakers” had a legal right to do what they were doing, and if there could have been any purpose in the assemblage of persons under the circumstances as shown here, toward those.who were running the car, it was rather to cause them to desist in their operation of the -cars. It was not an endeavor to exercise any correctional powers over them in the sense and meaning» of this statute.
*679 When anyone is in jail charged with some crime, and the people, as we have seen instances here in Ohio, feel that that man ought to be punished quickly and do not want to wait for the court and jury, and they take it into their own hands to correct him for his deed, that comes within the statute. But it does not point to anything like this. It is as foreign as can be to this kind of a transaction. The undoubted meaning of the language of the statute with respect to endeavoring to exercise some Correctional power over another person is that it is to prescribe a statutory penalty for acts of violence by a. mob against any one who has committed a crime, as if to correct him. And the purpose of the law is to compel those who are entrusted with the duty on behalf of the state and of the municipality or county, to perform their duty honestly and correctly in the matter of the enforcement of the law. And the penalty prescribed against the county is to set an example to those whose duty it is to enforce the law, that they must do it at the expense of the county if they fail.
This view finds support in Commissioners v. Church, 62 O. S., 318, on page 344, where Judge Davis makes the following statement:
"Even a criminal,” he says, "has some rights which can not be forfeited.” He means by that, of course, that the criminal must have his day in court; that he should not be lynched. "Every person who is accused of a crime, is guaranteed a fair trial; and he can not be deprived of life and liberty without due process of law. The faith of the body politic is pledged to make good the constitutional guarantees to the individual.” Now mark this ‘ ‘ To the counties and municipal corporations are delegated, in large measure, the duties of local administration. Within their jurisdiction they stand in the place of the state, in enforcing laws, and in protecting life, the liberty and the property of the citizen. If a large number of the people of any county become imbued with the lynching spirit,” or we might say with the mob spirit and the riot spirit, "or negligent and indifferent to the due and orderly enforcement of the laws,” and we certainly had an illustration of that during the strike, "so *680 that lawless men act with impunity, then there is no course for the state to take, other than to intervene and directly protect the individual, as well as to enforce upon the community the observance of good order. ’ ’
Now, in that case from which the quotation was just made, the question was the liability of the county for death caused by the lynching of a person confined in the county jail. And the court expressed the view that the Constitution extends to the protection of individuals and counties and municipal corporations alike. Now just notice that. The purpose of the law is to protect not only the one who is injured, but it is also the purpose to protect the county and the municipality, and to give neither one a preference.
And this rule of equal protection to all is the undoubted aim of the law. And we believe that the construction which we have placed upon the law in question is the only one which will do equal justice as between individual, municipality and county. We do not believe that it was the intention to so extend the'law in question by any process of stretched construction as to make the county liable for acts over which: it has not primary, immediate and direct control. We do not believe that the law was designed to do more than to afford a remedy against the county when it owed a direct and specific duty to guard and protect persons when the law makes it its duty so to do. When one charged with crime is in the custody and control of officials of the county, this so-called mob law is designed to compel the county, through its officials, at its peril to properly exercise its duty. Now that is the only purpose of that law. No one ever dreamed of making any other use of that law until these cases were filed in this county.
It seems to be a monstrous proposition to hold that this law, limited as we believe its provisions are for the specific purposes provided therein, was designed to make the county legally responsible for the neglect or failure of the proper officials of a municipality who are to enforce the law and to protect its citizens, who are primarily and specifically charged with the immediate duty of suppressing the violence of mobs or riots within the municipality.
*681 Now we know very well that the county never ean owe any duty in ear-e of a mob or riot within a municipality, excepting as is provided by law, when the mayor of the municipality believes himself un,able to cope with the conditions and he acts under the statute and calls upon the sheriff to aid in the suppression of violence. Then, and not until then, does the county owe any duty with reference to that particular matter. All of the duties up to that point are imposed upon the mayor of the municipality, and that is one of the strongest reasons, if we are desirous of doing absolute and equal justice between the individual injured and the municipality and the county, why we should give the construction to the law which we have here given.
For these reasons, gentlemen of the jury, the court will sustain the motion and direct you to return a verdict in favor of the defendants.