KELLY *v.* BECKMAN, COMMISSIONER, ET AL.

[Cite as Kelly v. Beckman, Commr., 13 Ohio Misc. 219.]

(No. 937990—Decided October 3, 1967.)

Cincinnati Municipal Court.

*Mr. E. Ronald Grossheim*, for plaintiff.
*Hon. Melvin.G. Rueger*, prosecuting attorney, and *Mr. John A. Gehrig*, for defendants.

DENNING, J. This matter came on to be heard on the demurrer of the defendants to the petition, stating as a reason "plaintiff does not state facts to show a cause of action."

The principal allegations of the petition are: "That on June 13, 1967, the city of Cincinnati was besieged by mobs and rioters seeking to bring about social reforms by violence: The Mayor of the city of Cincinnati requested the Ohio National Guard for assistance: The riot act was read by police in the strife torn areas of the city during the time of riot: Plaintiff was assaulted, battered, and lynched by a mob while driving a taxicab on Montgomery Road in Cincinnati. The plaintiff was beaten and pelted by rocks, bricks, * * * causing him to sustain certain injuries, loss of wages and medical expenses."

The authority for bringing an action as claimed by the plaintiff is Section 3761.03, Revised Code, which reads:

"A person assaulted and lynched by a mob may recover from the county in which such assault is made * * *"

The opening lines of this section seem very broad in their implication except on analysis three very important words require consideration: to wit: "assaulted and lynched." The conjunctive "and" insists that two acts be perpetrated on the person claiming under this section: First, that he be assaulted, and secondly, that he be lynched.

Are these words synonymous? "Assault" is an unlawful attempt or threat to do bodily harm or violence against the person of another. The word "lynch" is taken from

the name "Charles Lynch," a Virginia Justice who took the law into his own hands to kill or execute without due process of law, especially through the agency of a mob. "Mob" is defined as "A tumultuous riot or rabble; a crowd excited to some violent or unlawful act. The word in legal use is practically synonymous with riot, but the latter is the more correct term."—Bouvier.

As to the word "assault" there is a connotation that the plaintiff was threatened and therefore the petition meets the requirement of the section above quoted.

But does the petition meet the second requirement, which states: "and lynched." Add the word law to lynch and it is defined "punishment by private individuals without legal formalities and without due process of law."

Did the persons constituting the mob attempt to, or punish the plaintiff for some wrongdoing he personally did to those who assaulted him and in which the law was powerless to act, or was he the accidental victim of an unruly mob, venting their frustration against all white society, by throwing bricks and rocks at whomever happened to be passing by the scene?

The defendants cite the case of *Lexa* v. *Zmunt et al., Bd. of County Commrs.*, 123 Ohio St. 510, paragraph three of the syllabus:

"To warrant a recovery under such statute it is not sufficient to show an injury resulting from the acts of a collection of people assembled for an unlawful purpose and intending to do damage or injury to some one, but there must appear also a purpose of exercising correctional power by violence and without authority of law."

Plaintiff relies upon the allegations in the petition, first paragraph: "The city of Cincinnati was besieged by mobs and rioters, seeking to bring about social reforms by violence."

Does this meet the above dictum, to wit: "also a purpose of expressing correctional power by violence"?

Throughout the petition the plaintiff uses and emphasizes the word: "riot—or rioters." Riot or rioters is the disturbance of the public peace by a number of persons who are unlawfully assembled and this does not seem to

have or to need any purpose, such as "exercising correctional power" or "seeking to bring about social reform."

If plaintiff is relying simply on the fact that he was injured solely by unknown persons in the act of rioting, seeking social reforms from society generally, which means more than 180,000,000 persons living in the United States, or even if plaintiff limits the society to the 503,000 persons in the city of Cincinnati, his petition is so general in its application as to "correctional powers" (above quoted) that it can have no meaningful personal connection with the plaintiff (an individual not known to the rioters nor a particular person whom they were trying to punish for an unlawful act) against those in the mob.

We hold that the Board of County Commissioners owed no extraordinary duty to protect plaintiff from the mob and rioters, under the circumstances then existing on June 13. If the statute imposes this duty upon the county to compensate for injury to persons under these circumstances, then I would hold Section 3761.03, Revised Code, unconstitutional, as being impossible of performance and an unwarranted burden on the local tax paying public, who would be burdened with millions of dollars of damages by rioters, while demonstrating for a cause, not local but national in its scope.

Although no reference is made to the following point by either counsel for plaintiff or defendants, we feel this proposition is apropos, since a demurrer searches the record. Section 3761.03, Revised Code, the section relied upon by plaintiff to bring this action, is the same as Section 6278, General Code, which was passed in 1896—no doubt inspired by the Cincinnati Court House riots of 1884. During the period from 1884 to 1896, the county was the most important seat of government. The then existing cities and villages were small and quite impotent in the matter of police protection, so that the sheriff's office was all important in dealing with crime or disorder. No doubt this is the reason for the county being singled out as the governmental agency that could best protect the citizens against mobs or rioters and hence this agency of government was held liable for the lack of such protection,

Like many things that have changed in 71 years, so have the character and status between counties and municipalities, and the statutes in question should be brought up to date by placing the responsibility for injury resulting from riots upon the cities wherein it happened or at least to make it possible to hold both the counties and cities jointly responsible. For this reason we are of the opinion that the statute should either be repealed or amended, because as of now the surging tides of time have obliterated its original purpose, outmoded it so that it seems to us now to be against the general public interest.

In *Grey* v. *Gibson*, 12 Ohio Nisi Prius (N. S.) 673, decided in 1912 (this seems to be the latest authority on the point) we find:

"Now we know very well that the county can never owe a duty in case of a mob or riot, within a municipality, excepting as provided by law."

Further we hold that Section 3761.03, Revised Code, does not have uniform application for the section limits the liability in excess of $1,000, and not to exceed $5,000, to those persons who earn a living by manual labor. We quote: "A person assaulted and lynched by a mob may recover from the county * * * if such injury results in permanent disability to earn a livelihood by *manual labor.*"

A great segment of the population, such as professional people, clerks, students, women, etc., who do not earn their living by manual labor are excluded from the benefits of this act. However, the court is not passing upon the constitutionality of this section for this reason, simply because it is not necessary or important to our conclusion to do so.

For the above reasons, the demurrer to the petition is sustained.

*Demurrer sustained.*